(83 App. Div. 262.)

### PEOPLE ex rel. SNYDER v. PARTRIDGE, Police Com'r.

(Supreme Court, Appellate Division, First Department.   May 8, 1903.)

1. MUNICIPAL CORPORATIONS — POLICE FORCE—DISCHARGE—MISCONDUCT—EVI-
   DENCE.
   Relator was dismissed from the police force on a specification charging
   him with requiring a person whose watch had been stolen to pay $10
   to the person in possession thereof for its recovery, and procuring a loan
   of money for the owner to make such payment.   The facts showed that
   the person in possession of the watch had taken it as security for a loan,
   and reported the fact to the police.   Relator endeavored to locate the
   stolen property for the owner, and it was delivered to him, in company
   with another officer, by the person who had possession thereof.   The
   owner insisted on repaying to such person the sum which he had ad-
   vanced for the loan, and requested a loan from the officers with which
   to reimburse him.   The other officer procured a loan for the owner, who
   gave it to the person who had reported the same.   Held, that the evi-
   dence did not substantiate the charge.

2. SAME—NEGLECT OF DUTY.
   The failure of the officers to arrest the person who had had possession
   of the watch and who had reported the same was not a neglect of duty.

3. SAME.
   A specification charging a policeman with neglect of duty in not re-
   porting to a superior officer the circumstances of the recovery of stolen
   property was not supported by evidence which merely showed that
   accused did not make a specific report to the sergeant in charge, who,
   however, knew of the circumstances, but did not enter the same in his
   blotter, although accused had reported the circumstances to the sergeant
   at the time, and brought the property to the station house, and had an
   entry made in the "Robbery Book," the "Recovered Property Book," and
   the "Detective Report Book."

4. SAME—REINSTATEMENT—LOSS OF SALARY.
   A policeman who was dismissed from the service and neglected to
   bring certiorari for his reinstatement for almost two years should not,
   on being reinstated, be allowed his salary for the time that he was not
   on duty.

Certiorari by the people, on the relation of Leroy Snyder, against
John N. Partridge, commissioner of police, to review dismissal of
relator from police force.   Judgment of dismissal reversed, with con-
dition.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, O'BRIEN, and INGRAHAM, JJ.

Louis J. Grant, for relator.

Theodore Connoly, for respondent.

O'BRIEN, J.   The relator, on January 5, 1900, was charged with
conduct unbecoming an officer and neglect of duty, and, as the result
of his trial on January 19, 1900, was, on April 2, 1900, dismissed from
the force.   On September 30, 1901, he petitioned the then commission-
er for a new trial, in order to present records of the station house which
had not been in evidence previously, and a rehearing was had, and
the records produced, but nothing further was done in the matter un-
til on March 26, 1902, the relator petitioned for the issuance of a
writ of certiorari.   There is no serious dispute as to the facts, and it
is only necessary to briefly review them for the purpose of determining

how substantial was the charge upon which the relator was dismissed from the force, and to what extent it was supported. The first specification bearing upon that part of the complaint which charged him with conduct unbecoming an officer was that the relator, upon receiving on December 25, 1899, information that one John Hannon had in his possession a watch which was alleged to have been stolen from one John C. Grigor, and which was subsequently identified by the latter as his property, and upon which Hannon claimed he had advanced to another person the sum of $10 as a loan, "did thereupon exact and require that the said Grigor should pay to the said Hannon the said sum of $10, and, for the purpose of having said Grigor so advance or pay to the said Hannon the sum of $10, * * * did loan or cause to be loaned by another to the said Grigor the sum of $10, to be by the said Grigor paid to the said Hannon." With respect to this specification the facts are that on December 24, 1899, John C. Grigor had reported to the police the theft of a watch, and that on New Year's eve, at about 12 o'clock, John Hannon, having become suspicious that a person who delivered to him a watch as security for a loan of $10, had not come honestly by it, reported the circumstance to Officer Butler, to whom he gave his address. Previous to this time the relator had met Grigor, and endeavored to locate the stolen property, and to him and Officer Perkins was given the information received by Officer Butler of the watch reported by Hannon. These two officers therefore found no difficulty in going to the address furnished, where they appeared in citizen's clothes on the evening of January 2d, and Hannon, who had in his possession the watch, produced it at their request, and all went to Grigor's house, where Grigor identified it as his property. Hannon at once offered to surrender the watch, and it was in fact delivered over to the two officers. It further appears that, instead of its being the relator who required Grigor to pay to Hannon the $10 which he had loaned on the watch, Grigor himself, according to the testimony, "insisted" that he wished to repay that sum to Hannon, and expressed his regret that he had not the money with which to do so, and, as he was a stranger in the city, had no friends from whom he could get it. He intended, he said, to go South the following morning, and had purchased his ticket; but with what change he had he sent to his people a telegram for money. Grigor then asked if the officers could not lend him $10 with which to reimburse Hannon, and thereupon Officer Perkins, not this relator, stated that he had a friend, who was a barkeeper, whom he thought would no doubt advance the $10 to Grigor, if he wished. The party then went to a liquor saloon, and during the course of conversation Officer Perkins stated to his friend, the barkeeper, the dilemma in which Grigor was placed, and the barkeeper agreed to loan the $10, and Grigor took the money and gave it to Hannon. Grigor then asked for his watch, but the officers refused to hand it over, stating that they desired to use it as evidence in the morning against the one who had stolen it, and who was then under arrest, and confined in jail upon another charge. The parties then separated, and the two officers went about their duties, which were to visit dance halls.

It will be noticed, therefore, that the relator had no part in suggest-

ing that the money could be borrowed, nor, so far as appears, did he take an active part in borrowing it; that all being a matter conducted by Officer Perkins, who, in the subsequent arrangements, obtained the $10 which Grigor gave to Hannon. There appears to be no question, moreover, but that even Officer Perkins did not require the money to be paid, but was only endeavoring to comply with Grigor's wishes. Grigor, so far as is shown, never complained of the payment of the $10, although he did object that after the repayment the watch was not then and there handed back to him. In this connection it appears that, after the parties had separated, Grigor went with a reporter to the station house, and there awaited the return of the relator and Officer Perkins until 2 a. m., at which time he again requested his watch, and was again told that it was to be retained so that it might be ready for production the next morning in court, to be used as evidence. So far, therefore, as this specification of conduct unbecoming an officer is concerned, we find the charge as made against the relator entirely without support, he not having required Grigor to repay the money, and not having borrowed it for him; and we think that the evidence in this respect presented no cause for dismissal.

We thus come to the second specification of the complaint—"that the said patrolman neglected and failed to perform his duty in not bringing the said Hannon to the precinct station house, and reporting to his superior officer the circumstances of the recovery of said watch." With respect to the alleged neglect of duty in not taking Hannon to the station house, it appears, as stated, that Hannon was the man who, having in his possession the watch, which he claimed to have received as security for a loan of $10, and, becoming suspicious of the borrower, informed the police that he had the watch; and through the information thus furnished the officers were enabled to locate it. Moreover, when the officers called upon him, and asked him about it, he frankly stated again that he had the watch; and, when informed that it was the property of Grigor, from whom it had been stolen, he at once offered to return it to the owner or give it to the officers. Under these circumstances it would have been harsh treatment to mete out to Hannon to have arrested him and brought him to the station house; and it is doubtful whether, if brought there, he could, upon any ground, have been held. As his identity and his place of abode were known, and he had acted with perfect frankness in giving the information to the police, and had delivered up the watch when told of the facts, and his story as to his manner of obtaining it was in no way brought in question, there was nothing which called upon the officers to arrest him. This charge, therefore, was not sufficiently serious to warrant a dismissal.

There is, finally, that part of the specification which charges that the relator failed to perform his duty in not "reporting to his superior officer the circumstances of the recovery of the watch." Upon this subject it appears that when Grigor and the reporter came into the station house they made known to the sergeant in charge the circumstances of the recovery of the watch, and awaited the return of the two officers, and that, when the relator and Officer Perkins came in,

another sergeant, who was then in charge, knew that the parties were in conversation, although he testified that he did not know what was said, and that the relator made no special report to him. That the watch was brought to the station house by the officers that night; that it was then put in the drawer of the desk, where such property was kept; and that Officer Perkins did report to the "clerical man" the recovery of the watch, and that an entry was then made in the "Robbery Book"—was not disputed at the trial. When the rehearing of the charges against the relator was had, it was further brought out that the relator had himself made entries that night in the "Recovered Property Book" and the "Detective Report Book" as to the recovery of the watch. It is insisted, however, that there was the additional duty devolving upon the relator to make a specific report to the captain or sergeant at the desk, so that the circumstances might be entered in the blotter. It will be noticed that the duty of entering in the blotter the facts relating to the watch devolved upon the captain or sergeant. The clerical man was aware of the recovery of the watch that night, and an entry was made in the "Robbery Book," and the sergeant in charge earlier in the evening knew of the complaint of Grigor. And it further appears that early the next morning Officer Perkins called the attention of the sergeant at the desk to the watch, and took it from the drawer of the desk, which was the proper place for it, and said that he was going to Jefferson Market to procure a warrant for the man who had stolen the watch. This sergeant testified that he did not regard this as a report, and so made no entry in the blotter. We have also the testimony of the captain that on the previous day he had been informed by Perkins of the probability of the recovery of the watch.

It will thus be seen that there was no concealment by the relator or by Perkins, who accompanied him, as to just what they did with respect to recovering the watch; nor is it disputed that they brought it to the station house, and placed it with the proper custodian. And all that can be said is that the one whose duty it was to make the entry in the blotter—and there is no suggestion that this duty devolved upon the relator; the inference, on the contrary, being that it would devolve upon whoever was in charge of the desk at the station house—neglected to perform such duty. If an officer has any right to retain his position, it would be trifling with such right to say that upon these facts he could be dismissed or deprived of his position on the force.

It is neither within the province nor the inclination of this court to interfere with any judgment of a commissioner in dismissing a member of the force where such dismissal has any basis, or there is a dispute upon the facts. In the latter case it is not the duty of the court, but is one which rests with the commissioner, to draw the inference as to whether or not upon the facts, if disputed, the officer is guilty of the charge. Where, however, the character of the charge at best is not serious, and the specifications are not supported, it would be an idle ceremony to go through the form of a trial if the commissioner is not bound by the undisputed evidence, the only inference from which shows that the charge is not supported.

The only hesitation we have in this case in reversing the judgment of dismissal arises from the neglect or laches of the relator in waiting for a period of nearly two years, and until a few days before the statute would have barred his right to any relief, and then seeking, after performing no work or services for the city during that period, reinstatement, and the recovery of salary. His failure to proceed diligently should, we think, prevent his recovering any salary for the time that has intervened. In this connection it may be noted that the Revised Charter, which went into effect January 1, 1901 (Laws 1901, p. 1, c. 466), the year following the relator's dismissal, amended section 302, c. 378, p. 106, of the Charter of 1897, which provided that a proceeding of this character must be instituted within two years, by limiting the time within which such a proceeding to procure reinstatement should be brought to four months after the decision or order sought to be reviewed.

Our conclusion is that, upon the relator's stipulating to waive the salary for the entire period from the day of his dismissal until he shall report for duty, the judgment of dismissal should be reversed, and the relator reinstated to his former position, with $50 costs and disbursements; but that, upon his refusal to give such stipulation, his application for reinstatement should be denied, with costs. All concur.